O

# United States District Court
# Central District of California

| | |
|---|---|
| AIDA MANUKIAN,<br><br>  Plaintiff,<br><br>  v.<br><br>WOODWAY USA, INC. et al.,<br><br>  Defendants. | Case № 2:23-cv-9606-ODW (MAAx)<br><br>**ORDER GRANTING DEFENDANT BBC HOLDINGS, LLC'S MOTION FOR SUMMARY JUDGMENT [52]** |

## I.   INTRODUCTION

Plaintiff Aida Manukian brings this negligence and premises liability action against Defendant BBC Holdings, LLC d/b/a Barry's Boot Camp ("Barry's") regarding an injury she suffered while at a workout class at Barry's. (Second Am. Compl. ("SAC"), ECF No. 26.)  Barry's now moves for summary judgment.  (Mot. Summ. J. ("Motion" or "Mot."), ECF No. 52.)  For the reasons discussed below, the Court **GRANTS** Barry's Motion.[1]

## II.   BACKGROUND

The Court takes the following undisputed facts from Barry's Statement of Uncontroverted Facts ("SUF"), (ECF No. 52-1), Manukian's Statement of Genuine

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

1  Disputes of Material Fact ("SGDF"), (ECF No. 66), and Manukian's Statement of
2  Additional Material Facts ("AMF"), (ECF No. 67).
3       At the location in question, Barry's operates a high-intensity-training ("HIIT")
4  boutique fitness studio that offers classes. (SUF 4.) To create a "nightlife" and "club
5  type atmosphere," Barry's has a "Red Room" that uses red lights during exercise
6  classes and blasts audio "at or close to max." (SUF 5–7; AMF 97.) During the
7  classes, Barry's assigns two participants to one workout "station," each of which has a
8  treadmill and a bench. (SUF 8.) While one participant runs on the treadmill, the other
9  participant at the corresponding station exercises near the bench. (SUF 8, 14.) The
10 participants switch spots halfway through the class. (SUF 8.)
11      Barry's HIIT classes provide one row of treadmills and two rows of benches.
12 (Separately Bound Exhibits ISO Mot. ("Mot. Exs.") Ex. 4 ("General Layout"), Ex. 5
13 ("Video Screenshot"), ECF No. 52-2.) Participants at a station face away from one
14 another such that the person on the treadmill runs facing one side of the room and the
15 person at the bench area exercises facing the other side of the room. (*See* General
16 Layout; Video Screenshot; SUF 28; AMF 76.) There are around 41.5 inches between
17 the back of the treadmill row and the back of the nearest row of benches. (AMF 85.)
18 This is less than the seventy-eight inches clearance the treadmill's manual requires.
19 (AMF 87.) Though the treadmill did not utilize the optional rear guard, (AMF 81),
20 Barry's placed black-and-yellow safety tape about four inches behind the treadmill
21 row, between the treadmills and benches, (AMF 108; *see* SUF 34; General Layout).
22      Manukian started going to Barry's in 2021. (SUF 13.) From then until the
23 incident in question on July 21, 2023, she attended nearly forty classes at Barry's.
24 (SUF 15.) On October 4, 2021, Manukian electronically signed a document titled
25 "Barry's Bootcamp Covid 19 Waiver." (SUF 20, 22; AMF 113; Mot. Exs. Ex. 1
26 ("Liability Waiver").) The first section of the document, under the heading "General
27 Assumption of Risk & Limitation of Liability," states that the signatory agrees to
28 "fully release and hold harmless for any responsibility, cost, or damages, Barry's, its

1 instructors, its members and its employees for any injury . . . as a result of
2 participation in any Barry's Services." (SUF 26; Liability Waiver 1.)

3       On July 21, 2023, Manukian attended a "Barbie-and-Ken-themed" HIIT class.
4 (SUF 27.) During the class, Manukian was doing exercises commonly referred to as
5 "burpees," on the floor next to the bench at her station, Station 14. (SUF 29–30; *see*
6 Video Screenshot.) She was in the back row of benches, meaning the treadmills were
7 roughly 41.5 inches behind her bench. (*See* Video Screenshot; AMF 85.) Manukian
8 knew that her "station-partner" was running on Station 14's treadmill. (SUF 38.) She
9 also knew not to put her hands under a moving treadmill due to the risk of injury.
10 (SUF 40.)

11       While in the middle of a burpee, Manukian bumped her water bottle with her
12 right foot. (SUF 31.) The water bottle began rolling behind her towards Station 14's
13 treadmill. (SUF 31–32, 38; AMF 74.) As the water bottle rolled towards the
14 treadmill, Manukian turned around, took a step toward the treadmill, and reached to
15 grab the water bottle. (Mot. Exs. Ex. 14 ("Video Excerpt 1") at 00:09–00:12, Ex. 15
16 ("Video Excerpt 2") at 00:00–00:003; SUF 44; AMF 74–75.) The parties dispute
17 whether Manukian reached under the treadmill. (*See* AMF 75; Mot. 1.) In
18 Manukian's version of events, the belt of the moving tread caught her arm, bracelet, or
19 the water bottle, and then pulled her arm underneath the treadmill. (AMF 75.)
20 Manukian called for help, but it took a few seconds for anyone to hear or realize what
21 was happening. (AMF 100.) Manukian alleges she was severely injured, including
22 receiving extensive burns. (SAC ¶ 10; SUF 1; AMF 73.)

23       On October 5, 2023, Manukian filed this action against Defendants Barry's and
24 Woodway USA, Inc. ("Woodway"), the manufacturer of the treadmill, in Los Angeles
25 County Superior Court. (Notice Removal Ex. 1 ("Compl."), ECF No. 1-1.) On
26 November 13, 2023, Woodway removed the action to this Court based on diversity
27 jurisdiction. (Notice Removal, ECF No. 1.) On February 9, 2024, Manukian filed the
28 operative complaint. (SAC.) In the SAC, Manukian brings claims for premises

liability and negligence against Barry's and claims for strict products liability and negligence against Woodway. (SAC ¶ 11–52.)[2] Both Defendants separately moved for summary judgment. (Mot.; Woodway Mot. Summ. J., ECF No. 56-1.) Before the Court could rule on Woodway's motion, Manukian and Woodway reached a settlement, and the Court denied Woodway's motion as moot. (Min. Order, ECF No. 82.) Accordingly, this Order concerns Barry's Motion, which is fully briefed. (Opp'n, ECF No. 65; Reply, ECF No. 75.)

### III. LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A disputed fact is "material" where it might affect the outcome of the suit under the governing law, and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The burden of establishing the absence of a genuine issue of material fact lies with the moving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

Once the moving party satisfies its initial burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see Celotex*, 477 U.S. at 324. The non-moving party must show that there are "genuine factual issues that . . . may reasonably be resolved in favor of either party." *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (emphasis omitted) (quoting *Anderson*, 477 U.S. at 250). Courts should grant summary judgment against a party who fails to make a sufficient showing on an element essential to its case when it will ultimately bear the burden of proof at trial. *Celotex*, 477 U.S. at 322–23.

---

[2] Barry's and Woodway also filed crossclaims against one another. (Woodway's Crossclaim, ECF No. 28; Barry's Crossclaim, ECF No. 33.) These are not the subject of this Order.

1　　　　In ruling on summary judgment motions, courts "view the facts and draw reasonable inferences in the light most favorable" to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007) (internal quotation marks omitted). Conclusory, speculative, or "uncorroborated and self-serving" testimony will not raise genuine issues of fact sufficient to defeat summary judgment. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002); *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Moreover, though the court may not weigh conflicting evidence or make credibility determinations, there must be more than a mere scintilla of contradictory evidence to survive summary judgment. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

　　　　The court may assume that material facts claimed and adequately supported are undisputed except to the extent that such material facts are (a) included in the opposing party's responsive statement of disputes *and* (b) controverted by declaration or competent written evidence. C.D. Cal. L.R. 56-4. The Court is not obligated to look any further in the record for supporting evidence other than what is actually and specifically referenced. *Id.*

### IV.　EVIDENTIARY OBJECTIONS

　　　　Manukian and Barry's each object to the others' evidence. (Pl.'s Objs., ECF No. 68; Def.'s Objs., ECF No. 76.) Manukian disputes certain of Barry's facts offered in its SUF. (SGDF.) Notwithstanding its objection to Manukian's evidence, Barry's did not file a reply in support of its SUF or an opposition to Manukian's AMF.

　　　　Most of the objections are to facts and evidence irrelevant to this Court's analysis. For example, many of the objections and factual disputes concern whether the Liability Waiver bars Manukian's claims. (*See, e.g.*, Pl.'s Objs. 2–4; SGDF 23, 25–26.) As discussed below, the Court does not reach this issue, so it need not rule on objections related to it.

　　　　The Court does not consider improper argument and legal conclusions offered in Barry's SUF and Manukian's SGDF and AMF, (*see* Scheduling & Case

1 Management Order 7–9, ECF No. 22), so any objections on that basis are moot.
2 Moreover, evidentiary objections on the grounds that such evidence is "irrelevant,
3 speculative, and/or argumentative, or that it constitutes an improper legal conclusion
4 are all duplicative of the summary judgment standard itself." *Burch v. Regents of*
5 *Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006). Accordingly, the Court
6 overrules any objections on the grounds of relevance and improper legal argument.

7       One set of objections requires further discussion. Much of Manukian's AMF
8 comprises quotes from expert declarations. (*See* Decl. Karla Castro ISO Opp'n
9 ("Castro Decl.") Ex. 1 ("Stevick Decl."), Ex. 2 ("Avrit Decl."), ECF No. 65-1.)
10 Quoting from the Stevick Declaration in the AMF, Manukian describes the security
11 footage from the incident and states that her "momentum may have carried the bottle
12 and her hand (and/or her bracelet) under the projected downward round end of the
13 treadmill, but not under the straight portion further forward." (AMF 78 (quoting
14 Stevick Decl. ¶ 32).) Based on the Stevick Declaration, Manukian also asserts that the
15 videos show she "was wearing bracelets at the time of the incident, which may have
16 been caught in the treadmill belt, 'as they came back together on the underside of the
17 treadmill end roller.'" (AMF 80 (quoting Stevick Decl. ¶¶ 34–35, 42).)

18       Barry's objects to the underlying evidence—the Stevick Declaration—on the
19 grounds that, among other things, the statements are merely recitations of the video,
20 conclusory speculations, and commentary insufficiently supported by expert opinion.
21 (Def.'s Objs. Nos. 1–2.) The Court agrees with Barry's. In arriving at these
22 conclusions, Stevick relies on the video, an accident report from the date of the
23 incident, and the treadmill itself. (*See* Stevick Decl. ¶¶ 29–35.) He observes from the
24 video that Manukian's "momentum may have carried the bottle and her hand (and/or
25 her bracelet) under the projected downward round end of the treadmill, but not under
26 the straight portion further forward." (*Id.* ¶ 32.) And he relies on an incident report
27 for the conclusion that "Manukian was wearing a bracelet, and it was thought at the
28 time of the accident that it was caught in the treadmill belt slats as they came back

together on the underside of the treadmill end roller." (*Id.* ¶ 34 & fig. 5 ("Incident Report").) He then includes a photo of the treadmill model to show the location of the "segmented belt gaps." (*Id.* ¶ 34 fig. 6.) Stevick concludes that the "available evidence . . . strongly indicate[s]" that Manukian's "bracelet was caught in the belt of the moving tread." (*Id.* ¶ 35 (second quoting Incident Report).) None of this analysis requires any expert opinion or concerns Stevick's "scientific, technical, or specialized knowledge," Fed. R. Evid. 702, as a "mechanical engineer with a specialty in failure analysis and design," (Stevick Decl. ¶ 2). It is up to the Court—the fact finder on a motion for summary judgment—to consider the evidence Stevick reviewed and determine whether there is a genuine dispute of material fact as to whether Manukian's bracelet got caught and whether she reached under the treadmill. Therefore, the Court **GRANTS** Barry's objections as to paragraphs 32 and 35 in the Stevick Declaration. (Def.'s Objs. Nos. 1–2.) The Court will not consider these portions of the Stevick Declaration, but will consider Manukian's dispute that she reached under the treadmill, (SGDF 43–44).

Finally, to the extent the Court relies on objected-to evidence in this order without further discussion, those objections are overruled. *See Burch*, 433 F. Supp. 2d at 1122 (proceeding with only necessary rulings on evidentiary objections).

## V.     DISCUSSION

Barry's moves for summary judgment on two grounds. First, Barry's asserts that the Liability Waiver Manukian signed bars both of her claims. (Mot. 14–17.) Second, Barry's argues that the open and obvious danger of encountering the moving treadmill means that it cannot be liable for Manukian's decision to reach for the water bottle while it was rolling towards the treadmill. (*Id.* at 17–19.) In the alternative, Barry seeks partial summary judgment to establish that Manukian executed a release and waiver agreement and that this agreement bars her claims for ordinary negligence. (*Id.* at 19–22.) The Court only addresses the open and obvious danger doctrine because this doctrine defeats both of Manukian's claims as a matter of law.

1    Generally, if a "danger is so obvious that a person could reasonably be expected
2 to see it, the condition itself serves as a warning, and the landowner is under no further
3 duty." *Danieley v. Goldmine Ski Assocs., Inc.*, 218 Cal. App. 3d 111, 122 (1990)
4 (emphasis omitted); *see Blodgett v. B.H. Dyas Co.*, 4 Cal. 2d. 511, 512 (1935) ("The
5 owner of property . . . . is not liable for injury to an invitee resulting from a danger
6 which was obvious or should have been observed in the exercise of reasonable care.")
7 However, a landowner's duty remains where "it is foreseeable that even an obvious
8 danger may cause injury, if the practical necessity of encountering the danger, when
9 weighed against the apparent risk involved, is such that under the circumstances, a
10 person might choose to encounter the danger." *Osborn v. Mission Ready Mix*,
11 224 Cal. App. 3d 104, 121 (1990); *accord Danieley*, 218 Cal. App. 3d at 122.
12 Accordingly, the Court first considers whether the danger in this case was open and
13 obvious before turning to whether there was a practical necessity for Manukian to
14 encounter that danger.

15 **A.    Open and Obvious Danger**

16    In its Motion, Barry's argues that the danger posed by reaching towards a
17 moving treadmill was open and obvious. (Mot. 18.) Manukian does not appear to
18 contest this point. (*See generally* Opp'n.) In her Opposition, Manukian recites
19 lengthy quotations from four cases concerning open and obvious hazards, without
20 providing *any* analysis. (*See id.* at 20–22 (collecting cases).) The case language
21 Manukian quotes concerns when defendants owe a duty to a plaintiff even where the
22 danger is open and obvious. (*Id.*) From these quotations, the Court cannot infer that
23 Manukian objects to Barry's argument or disputes that the danger of the moving
24 treadmill was open and obvious. Accordingly, the Court deems the point waived.
25 *See, e.g.*, *Am. Int'l Enters., Inc. v. FDIC*, 3 F.3d 1263, 1266 n.5 (9th Cir. 1993)
26 ("Issues raised in the brief that are not supported by argument are deemed
27 abandoned."); *Jenkins v. County of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005)
28

(agreeing that plaintiff "abandoned" two of her claims "by not raising them in opposition" to the motion for summary judgment).

Even had Manukian disputed the open and obvious nature of the hazard, the Court concludes that the danger of the moving treadmill was open and obvious as a matter of law. *See, e.g.*, *Buchanan v. Lowe's Home Ctrs., LLC*, No. 2:14-cv-07560-JAK (FFMx), 2015 WL 12661944, at *7 (C.D. Cal. Aug. 17, 2015) ("Whether a hazard is open and obvious danger may be decided as a matter of law when reasonable persons could not disagree that the condition was obvious or when a plaintiff admits to having seen the condition prior to movements that led to an injury." (collecting cases)).

At the time of the incident, Manukian knew reflective black-and-yellow tape ran the length of the floor behind the treadmills. (*See* SUF 39 (noting black-and-yellow tape); Castro Decl. Ex. 3 ("Manukian Dep. Tr. 1") at 212:18–20, ECF No. 65-1 (testifying tape was reflective); *see also* General Layout.) True, Manukian disputes Barry's assertion that an instructor announced the purpose of the tape at the beginning of the class. (SGDF 35–37; *see* Manukian Dep. Tr. 1 at 211:25–212:4 (testifying that "I never heard an announcement [of] what [the tape] was for").) But she also testified that she "could infer what it's for." (Manukian Dep. Tr. 1 at 212:3–4.) And even though she testified that she is "not sure" whether she understood the tape was there "to inform [her] or alert [her] of anything," (*id.* at 212:12–17), there can be no *genuine* dispute of fact that, given the placement of the tape and her ability to "infer" its purpose, that the reflective black-and-yellow tape served to warn of a dangerous condition beyond it, i.e., the treadmills.

Independent of this, Manukian herself knew of the danger of one's hand being beneath a moving treadmill. She testified she knew that reaching under a moving treadmill posed an injury risk and she "would teach [her] children not to put their hands into a moving machinery or object." (SUF 40 (citing Mot. Exs. Ex. B ("Manukian Dep. Tr. 2") at 279:16–280:5, 284:18–25).) She further testified that she

1  did not need anyone to tell her not to do this.  (SUF 40 (citing Manukian Dep. Tr. 2
2  at 280:2–5).)   Manukian also admits that the water bottle was rolling towards the
3  treadmill, (SUF 33), and when she reached for her water bottle, she knew the treadmill
4  was running and someone was using it, (SUF 14, 38), and that she was wearing a
5  bracelet, (AMF 75, 80).  The security footage from the incident clearly shows that
6  Manukian stepped towards and reached past the black-and-yellow tape to grab for the
7  water bottle.  (*See* Video Excerpt 1 at 00:10–00:12[3]; Video Excerpt 2 at 00:02–00:04.)
8  Considering these undisputed facts together, the danger of reaching towards the
9  underside of a moving treadmill is open and obvious as a matter of law.  Even more,
10  the facts in this case show that Manukian herself specifically knew about this danger.

11  Manukian vehemently disputes that she reached under the moving treadmill.
12  (AMF 75; SGDF 43–44.)   She contends that she caught the water bottle before it
13  rolled under the treadmill and that she was pulled underneath the treadmill after the
14  treadmill belt caught some of her arm, bracelet, or the water bottle.  (AMF 75, 78–80.)
15  The Court need not decide if there is a genuine dispute of material fact as to whether
16  Manukian reached her hand under the moving treadmill.  The danger of crossing
17  caution tape to reach for an object that is rolling towards a moving treadmill is open
18  and obvious.  Thus, regardless of whether she actually reached underneath the
19  treadmill, Manukian chose to reach close enough to the open and obvious hazard of
20  the moving treadmill that it caught some of her arm, bracelet, or water bottle and
21  "pulled" her "underneath the machine."  (AMF 5; *see* Video Excerpt 1 at 00:10–
22  00:12; Video Excerpt 2 at 00:02–00:04.)  Accordingly, whether Manukian reached
23  under the treadmill or not, the Court finds that the danger of the moving treadmill was
24  open and obvious as a matter of law.  *Cf. Hanus v. United States*, No. 5:16-cv-00922-

---

[3] In Video Excerpt 1, the black floor can be seen between the water bottle and the tape before Manukian makes contact with the water bottle. (Video Excerpt 1 a 00:10–00:12); *see, e.g.*, *Adler v. Church & Dwight Co.*, No. 5:20-cv-02067-MEMF (SPx), 2022 WL 17253629, at *5 (C.D. Cal. Nov. 23, 2022) (considering photograph on summary judgment "to determine whether a condition is open and obvious" (collecting cases)).

DMG (KKx), 2017 WL 1397959, at *3 (C.D. Cal. Feb. 10, 2017) (finding danger was open and obvious on summary judgment where plaintiff "chose to encounter the hazard" and "the fact that [p]laintiff misjudged the likelihood that he would be injured does not render the hazard posed by the door any less open and obvious").

**B.      Duty to Remedy**

Having found the danger was open and obvious, the Court must determine whether Barry's had a separate duty to remedy this danger because "the obviousness of a condition does not necessarily excuse the potential duty of a landowner, not simply to warn of the condition but to rectify it." *Martinez v. Chippewa Enters., Inc.*, 121 Cal. App. 4th 1179, 1184 (2004).

A danger that is so obvious it requires no warning may nonetheless give rise to a duty to remedy the hazard in situations where "the practical necessity of encountering the danger, when weighed against the apparent risk involved, is such that, under the circumstances, a person might choose to encounter the danger." *Johnson v. The Raytheon Co., Inc.*, 33 Cal. App. 5th 617, 632 (2019). For example, there may be a duty to remedy wet pavement that obviously poses a danger where "the pavement appears to have provided a principal if not sole access way from the street to defendant's building." *Martinez*, 121 Cal. App 4th at 1185. Conversely, where a ladder left in the middle of a store aisle poses an open and obvious danger, there is no duty to move the ladder as long as there was "unobstructed room to pass on both sides of the ladder." *Sassoon v. Lowe's HIW, Inc.*, No. 2:13-cv-03233-RGK (Ex), 2014 WL 11870197, at *3 (C.D. Cal. Mar. 10, 2014), *aff'd sub nom. Sassoon v. Lowe's Home Ctrs., LLC*, 643 F. App'x 624 (9th Cir. 2016).

In its Motion, Barry's argues that there was no practical necessity for Manukian to reach towards the treadmill because she "had multiple options available to her to avoid encountering the treadmill." (Mot. 19.) It asserts that she "could have very easily asked the person using the treadmill to stop, could have asked the instructor to

pause the class, or taken any number of alternatives to avoid the injuries she suffered by voluntarily reaching underneath the treadmill." (*Id.*)

As with whether the treadmill posed an open and obvious dangers, Manukian does not make any argument that there was a practical necessity to encounter the treadmill. (*See* Opp'n 19–22.) She recites the legal standard for this doctrine by quoting liberally from four cases but offers no argument as to its application here. (*Id.*); *see Kim v. United States*, 121 F.3d 1269, 1277 (9th Cir. 1997) ("declin[ing] to reach" issue that "received a cursory mention by" party because party did "not address this issue in his briefing" (citing *Am. Int'l Enters.*, 3 F.3d at 1266 n.5)). The closest Manukian comes to touching on this point is in the introduction of her Opposition. (*Id.* at 8.) There, relying on the undisputed facts, Manukian asserts she was "terrified that, given the 'tight' area . . . between the treadmill and the benches, someone might trip over her water bottle and fall or otherwise be injured." (*Id.* (citing SUF 32).)

The problem with this argument is twofold. First, she offers no facts or argument to support that this fear was reasonable or foreseeable such that a person might choose to encounter the danger of the moving treadmill. She does not identify who "might trip over her water bottle." (*Id.*) Nobody was walking towards her area when she tried to grab her water bottle. (Video Excerpt 1 at 00:10–00:15; Video Excerpt 2 at 00:00–00:05.) Class participants were exercising at their respective stations and the only other person in the area, an instructor, was walking *away* from Manukian's station. (Video Excerpt 1 at 00:10–00:15; Video Excerpt 2 at 00:00–00:05.) Also, the water bottle was rolling towards the underside of the treadmill and *away* from the walking path. (Video Excerpt 1 at 00:10–00:15; Video Excerpt 2 at 00:00–00:05.) If the water bottle was not already under the treadmill at the time Manukian reached for it, it would have been in mere seconds.

Second, even if her fear was reasonable or foreseeable, Manukian fails to address the alternatives Barry's raised in its Motion. (*See* Opp'n.; Mot. 19); *Cruz-Sanchez v. Nat'l R.R. Passenger Corp.*, No. 2:16-cv-06368-MWF (KSx), 2018 WL

6017034, at *8 (C.D. Cal. June 8, 2018) (granting summary judgment in favor of defendant where "[t]he evidence is uncontroverted that [plaintiff] could have taken other, much safer routes" to avoid the open and obvious danger "even if they were longer").  Barry's poses several alternatives that Manukian could have taken to reaching for the water bottle, including asking the instructor to pause the class or asking the person using the treadmill to stop running briefly.  Manukian's failure to address Barry's proposed reasonable alternatives amounts to a concession on the issue.  *See, e.g.*, *Jenkins*, 398 F.3d at 1095 n.4 (agreeing that plaintiff "abandoned" two of her claims "by not raising them in opposition" to the motion for summary judgment); *Star Fabrics, Inc. v. Ross Stores, Inc.*, No. 2:17-cv-05877-PA (PLAx), 2017 WL 10439691, at *3 (C.D. Cal. Nov. 20, 2017) ("Where a party fails to oppose arguments made in a motion, a court may find that the party has conceded those arguments . . . .").

      Manukian fails to show a practical necessity to encounter the moving treadmill in the way she did.  She also fails to show that this encounter was reasonably foreseeable.  And she does not challenge the alternatives available to her to avoid encountering the moving treadmill.  Given this, Barry's had no duty to remedy the danger posed by a class participant reaching towards the underside of a treadmill as Manukian did here.  *See, e.g.*, *Jacobs v. Coldwell Banker Residential Brokerage Co.*, 14 Cal. App. 5th 438, 448 (2017) (affirming grant of summary judgment to defendant where defendant did not invite potential buyers of property to approach the edge of an empty swimming pool, plaintiff could have avoided the pool's edge as he viewed the property, and nothing in the record suggested a "necessity" to encounter the dangerous condition of the empty pool); *Allen v. Lowe's Home Ctrs., LLC*, No. 21-55836, 2022 WL 1599273, at *2 (9th Cir. May 20, 2022) (affirming grant of summary judgment to defendant where it was not reasonably foreseeable that a customer would ignore a "big giant steel cart" in the middle of an aisle, and where plaintiff presented

no facts to support he was "somehow required to encounter the cart in the way he did" (emphasis omitted).)

As it finds the danger of the treadmill was open and obvious, and that Barry's had no duty to remedy this danger, the Court **GRANTS** Barry's Motion and enters summary judgment in favor of Barry's on both of Manukian's claims against it.

## VI.  CONCLUSION

For the reasons discussed above, the Court **GRANTS** summary judgment in favor of Barry's. (ECF No. 52.) All dates are **VACATED**, except those related to the Manukian-Woodway settlement, (*see* ECF No. 82). The Motions in Limine filed by Manukian and Barry's are **DENIED as moot**. (ECF Nos. 91, 92, 98, 99, 100.)

Barry's and Woodway each filed crossclaims against one another. (Woodway's Crossclaim; Barry's Crossclaim.) The Pretrial Conference Order ("PTCO") that Manukian and Barry's signed and the Court approved states that "[a]ll other parties named in the pleadings and not identified in the [PTCO] are now dismissed. (PTCO 3, ECF No. 109.) The PTCO does not list Woodway as a remaining party and does not reference the crossclaims. (*See id.*) Accordingly, Barry's and Woodway are **ORDERED TO SHOW CAUSE within seven (7) days** of this Order why the Court should not dismiss the crossclaims.

**IT IS SO ORDERED.**

April 22, 2025

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**